TRANSAMERICAN REFINING
CORPORATION, Plaintiff,

v.

DRAVO CORPORATION, et
al., Defendants.

Civ. A. No. H–88–789.

United States District Court,
S.D. Texas,
Houston Division.

Jan. 16, 1990.

Grundy, Houston, Tex., Robert V. Abendroth (argued), Marcia R. Rimai, Hollis E. Wright, Whyte & Hirschboeck, S.C., Milwaukee, Wis., Andrew W. Goldwater, Bruce Kaplan (argued), Friedman & Kaplan, New York City, William Key Wilde, Marc D. Murr, Bracewell & Patterson, Houston, Tex., Thomas Cummings, Glenn E. Davis, Armstrong, Teasdale, Schlafley, Davis & Dieus, St. Louis, Mo., John J. Cassidy, David Gelfand, Miller, Cassidy, Larroca & Lewin, Washington, D.C., William B. Allison, Sewell & Riggs, Houston, Tex., Ronald S. Liebman, Dean M. Dilley, Charles Camp, Patton, Boggs & Blow, Washington, D.C., Thomas A. Donovan, Kirkpatrick & Lockhart, Pittsburgh, Pa., Jeffrey S. Lynch, Mark W. Bayer, Ellen A. Presby, Joseph J. Mastrogiovanni, Jr., Gardere & Wynne, Dallas, Tex., Joseph A. Katarincic, Katarincic, Salmon & Steele, Pittsburgh, Pa., Michael D. Fischer, Mark Sweeney, Debra A. Juncker, Foley & Lardner, Milwaukee, Wis., Stephen Asher, Kohn, Savett, Klein & Graf, P.C., Philadelphia, Pa., Ronald J. Blask, Ronald J. Blask & Associates, Houston, Tex., James I. Smith, Ryan & Smith, Houston, Tex., Jeffrey M. Kaplan, Stanley S. Arkin, P.C., New York City, John Irvine, Thelen, Marrin, Johnson & Bridges, Houston, Tex., G. Larry Knapp, Dunn, Kacal, Adams, Pappas & Law, Houston, Tex., Grant S. Lewis, Charles C. Platt, LeBoeuf, Lamb, Leiby & MacRae, New York City, Roger R. Wright, Jr., Woodward, Hall & Prim, Houston, Tex., William B. Bohling, Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, Steven Buxbaum, Sheinfeld, Maley & Kay, Houston, Tex., Robert L. Ketchand, Webster & Sheffield, Houston, Tex., for defendants.

William H. White (argued), Susman, Godfrey, Houston, Tex., Allen D. Black (argued), Donald L. Perelman, Fine, Kaplan & Black, Philadelphia, Pa., Joseph Goldberg, Carpenter & Goldberg, P.A., Albuquerque, N.M., Vance K. Opperman, W. Joseph Bruckner, Opperman & Paquin, Minneapolis, Minn., Lynn Lincoln Sarko, Mark A. Griffin, Keller Rohrback, Seattle, Wash., for plaintiffs.

John D. Roady (argued), Lynda M. Irvine, E. Scott Lineberry, Hutchenson &

## ORDER

NORMAN W. BLACK, District Judge.

Pending before the Court is Plaintiffs' motion for class certification. Defendants have filed a joint response and three Defendants have filed supplements to the response. After careful consideration of the motion, responses and relevant case law

the Court is of the opinion that class certification is appropriate in this matter.

This suit arises out of an alleged conspiracy to illegally and secretly manipulate the price of specialty steel piping materials sold under cost-plus arrangements throughout the United States between 1966 and 1985. The manufacturers or distributors, as suppliers of specialty steel piping, allegedly made arrangements with pipe fabricators to quote an inflated price on steel which was to be resold by the pipe fabricators on a cost-plus basis. It is alleged that the supplier and fabricator later divided the price differential through payments or credits. Plaintiffs have asserted two legal theories; one based on the Sherman Act and the other on common law fraud.

Plaintiffs' proposed class consists of the end-users of specialty steel piping who made purchases on a cost-plus basis. The various class members constructed nuclear power plants, conventionally-fueled power plants, refineries, coal gasification plants, and other projects using specialty steel piping material during this twenty year period. Plaintiffs contend that from 1966–1985 practically the entire specialty steel piping industry engaged in this conspiracy to raise prices by practices which destroyed the competitive price-setting mechanism for cost-plus contracts. The conspiracy was not revealed until prosecutors convened several grand juries to investigate the activity. As a result numerous participants have been indicted and several individuals and companies have pled or been found guilty.

The class proposed by the Plaintiffs is defined as follows:

All purchasers of specialty steel piping material in the United States who purchased specialty steel from any of the defendants or their co-conspirators pursuant to cost-plus contracts or arrangements (including cost-plus provisions or elements in contracts or arrangements) during the period January 1, 1966 through December 31, 1985, but excluding from the class the named defendants and their co-conspirators. Specialty steel piping materials includes alloy steel, stainless steel and certain limited types of carbon steel products (including piping, fittings, hangers, supports, flanges and valves) sold on a cost-plus basis.

The Court must decide whether to certify the class as urged by the Plaintiffs or allow each litigant to pursue its claims on an individual basis. Not only must the requirements of Rule 23, Fed.R.Civ.P. be considered but also which alternative will best serve the ends of justice, fairness, and Court efficiency.

In making a determination the Court must examine the specialty steel piping industry and attempt to understand the product, the sellers and the buyers. Specialty steel piping includes two varieties of piping: stainless steel and other "alloy" steel. This piping is used in industrial plants where products are transported at high temperatures or pressures, are highly corrosive, or where it is required for sanitary purposes.

Specialty piping is made by pipe manufacturers who then sell to distributors. Transactions between these two groups are not part of this litigation. Manufacturers and distributors, referred to as suppliers, sell the specialty steel piping to fabricators who construct the customized configurations required by a particular plant. These configurations are then sold to the end-user, generally on a cost-plus basis.

The proposed class consists only of purchasers of specialty steel piping sold on a cost-plus basis. Projects and contracts or parts thereof involving sales on any other basis are irrelevant. Plaintiffs' contend that the cost-plus transactions of the fabricators were affected by the industry-wide anti-competitive practices alleged in their complaint. They allege that when a fabricator called a supplier for specialty steel piping he was asked if this was to be on a cost-plus basis. If the fabricator responded in the affirmative he would then give the supplier a code which indicated the percentage of increase that was to be added to the quote. This price boosting scheme was successful because it was industry-wide. Since the practice was so pervasive there was a break down in the com-

petitive process which was sacrificed in favor of unlawful price-fixing and profits.

Plaintiffs believe there was a single common, industry-wide conspiracy which involved all the major participants. However, Defendants complain of the Plaintiffs' lack of specificity at this point in time. It is important to keep in mind that discovery in this matter has been stayed except on the issue of class certification. As a result, Plaintiffs have had little opportunity to explore the intricacies of the merits of the case. Plaintiffs are not required to prove their case in order to be entitled to class certification and have presented the Court with sufficient evidence to support its claim for class certification.

■ The Court must determine whether Plaintiffs have satisfied the requirements of Rule 23(a), and if so, whether the proposed class properly falls within a subsection of Rule 23(b). Section (a) lists four requirements for class certification. First, the class must be so numerous that joinder of all members is impracticable. Plaintiffs contend that the class numbers in the hundreds or thousands, which is more than enough to satisfy the numerousity requirement. Class members consist of oil refineries, nuclear and conventional power plants plus other companies that purchased specialty steel piping on a cost-plus basis. If a customer made cost-plus purchases, it is a member of the class. It is not necessary to determine the identity of the class members at the time of class certification. *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir.1970). Plaintiffs have compiled a preliminary list of several hundred victims which more that satisfies the numerosity requirement of the Rule.

■ Second, according to Rule 23(a)(2) there must be *some* questions of law or fact common to the class. This is different from Rule 23(b)(3) which requires that the common questions "predominate" over the questions affecting only individual class members. It is clear that, while questions not common to all may arise, there are common questions of law or fact, the most obvious being the very existence of a conspiracy among the Defendants. Therefore,

the Court finds this requirement has been met.

■ Third, the claims or defenses of the representative parties must be typical of the claims or defenses of the class. The named Plaintiffs' claim must stem from the same event, practice or course of conduct that forms the basis of the class claims and be based on the same remedial theory. 7A Wright, Miller & Kane, *Federal Practice and Procedure*, § 1764 at 228 (1986). Here the named Plaintiffs' claims, as well as the class claims, are based on the alleged injury from a national industry-wide conspiracy to restrain trade. The named Plaintiffs built a representative sample of projects and purchased substantial quantities of specialty steel on a cost-plus basis for construction projects. Therefore, based on the class definition, this Court finds that the claims of the representative Plaintiffs are typical of those of the proposed class members.

■ Finally, Rule 23(a) requires that the representative parties will fairly and adequately protect the interests of the class. The test centers on whether the interests of the class representatives conflict with those of the class, and whether the class representatives would competently represent the interests of the class. *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975). Since the named Plaintiffs have purchased substantial steel on a cost-plus basis they have a true stake in this litigation and have the capacity and willingness to fairly, adequately and effectively prosecute this action in behalf of the class.

Based on the above the Court finds Plaintiffs have satisfied the requirements of Rule 23(a) and must now determine whether the proposed class properly falls within one of the subsections of 23(b). In this case the only subsection of Rule 23(b) that need be addressed is (3). According to this section a Court may certify a class provided questions of law or fact common to members of the class *predominate* over any questions affecting only individual members. It also requires a determination

that a class action is superior to other methods of adjudication and that a class action would be more economical in the areas of time, effort, and expense than individual lawsuits.

"[T]here are no hard and fast rules which have developed regarding the suitability of a particular type of antitrust case for class action treatment. The unique facts of each case will generally be the determining factor governing certification." *State of Alabama v. Blue Bird Body Company,* 573 F.2d 309, 316 (5th Cir.1978). However, factors pertinent to the required findings of predominance and superiority are delineated in Rule 23 and include "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action".

Defendants argue that individual proof of injury and damages will be necessary as to each class member and therefore common issues will not predominate. They argue there is a vast difference between horizontal conspiracies involving a standardized product sold at a standardized price, and the unique vertical contracts that existed here between pipe suppliers of different levels and functions, custom pipe fabricators, general contractors, engineers, agents and owners dealing with custom-designed, custombuilt manufacturing plant installations having no standard price. Defendants conclude only allegations of separate, multiple conspiracies between an individual fabricator and supplier have been made which may not be certified as a class action since each transaction must be analyzed on an individual basis.

At this point the Court cannot accept Defendants' argument that the fact of injury will not be susceptible of generalized proof. All Plaintiffs are required to prove the existence of a conspiracy and its impact on the class. As to the amount of damages, at least some individualized treatment will be required. "[T]he predominance test really involves an attempt to achieve a balance between the value of allowing individual actions to be instituted so that each person can protect his own interests and the economy that can be achieved by allowing a multiple party dispute to be resolved on a class action basis." 7A Wright, Miller & Kane, *Federal Practice and Procedure,* § 1777 at 518–19 (1986).

The Court believes that if the alleged conspiracy caused artificially high price levels to prevail in the specialized steel piping industry when such pipe was sold on a cost plus basis, the existence of this conspiracy could constitute proof of injury to the class of purchasers of such piping. Evidence presented by Plaintiffs is sufficient to demonstrate that the conspiracy possibly existed and its impact on the class may be established on a class wide basis. The conspiracy issue is susceptible of generalized proof. *In re Corrugated Container,* 80 F.R.D. 244, 250 (S.D.Tex.1978). Due to the alleged interlocking nature of the scheme Plaintiffs' evidence will have class-wide application.

Although the current amount of evidence is not voluminous, it shows how Plaintiffs intend to establish the existence of the conspiracy. It is not necessary that Plaintiffs prove the merits of their case to establish entitlement to class certification. The allegations in the complaint, except for those on the issue of class certification, must be assumed to be true when determining if this litigation should proceed as a class action. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

Plaintiffs are confident that they will be able to offer generalized proof of conspiracy and have offered some evidence to show the trend of their proposed proof. "Whether the proof ultimately adduced will establish the existence of a national conspiracy among the defendants is not in issue here; it is not the court's function to weight this evidence for its truth but mere-

ly to ascertain whether it is of a type suitable for classwide use." *In re Corrugated Container Antitrust Litigation,* 80 F.R.D. 244, 250 (S.D.Tex.1978).

The Court finds that proof of impact as to each member of the Plaintiffs' class could be made in a generalized manner, and that it would not be necessary at the trial on liability for each member of the class to prove this factor on an individual basis. Plaintiffs plan to present generalized evidence to show a single common, industrywide conspiracy which involved all major participants and are confident that they will be able to offer generalized proof of conspiracy.

According to the Plaintiffs they expect to prove their case by utilizing three types of proof. First, they plan to rely on direct testimony from industry conspirators as to the nature, duration, scope and effect of this alleged scheme. Due to the settlements with several Defendants, Plaintiffs have gained access to industry-wide information which will substantiate their claim of conspiratorial activity in the industry. In addition, Plaintiffs have interviewed numerous participants and expect to present testimony from Defendants' officers regarding their involvement in the scheme.

To supplement this testimony, Plaintiffs intend to produce Defendants' internal documents which recorded the over-charging transactions. According to the Plaintiffs, unlike most conspirators, Defendants kept internal secret records detailing their illegal price-fixing activities. These will allegedly reveal the mechanics of the scheme, show that all major participants in the industry were actively involved in the conspiracy, the pattern of their involvement and confirm the witnesses testimony.

Finally, Plaintiffs expect to provide expert testimony regarding the existence of the conspiracy and Defendants' anti-competitive conduct, its impact on the price setting mechanism in the industry, and the measure of damages to the class. Plaintiffs have submitted affidavits from two professors who will be their experts. These affidavits state that Defendants' conduct was indicative of collusion and that

the existence of the conspiracy, its impact and the measure of damages could be established on a class-wide basis. Supplemental affidavits have also been filed which rebut the testimony of Defendants' experts.

Through the above evidence, Plaintiffs foresee proving that every major fabricator and supplier was involved in an interlocking price-fixing scheme; that the scheme operated in a similar fashion from fabricator to fabricator, from supplier to supplier, and from end-user to end-user; that these price-fixing practices remained in effect for over twenty years; that the conspirators concealed the scheme for a twenty year period; and that the price-boosting and conspiracy and the anti-competitive conduct in the industry had a substantial impact on all cost-plus purchases of specialty steel piping.

The Court is persuaded that the conspiracy issue, which concerns whether price information was exchanged and if so with what intent, plus whether any action was taken by the defendants based upon such exchanges, is susceptible of generalized proof since it deals primarily with what the Defendants themselves did and said. The central element throughout this conspiracy is whether Defendants acted in concert to decrease competition among themselves. If Plaintiffs are able to prove these facts, how the plan was manifested between specific individuals is irrelevant except in calculating the amount of damages.

■ Most price-fixing cases are suitable for class action due to an unlawful overcharge with respect to a homogeneous product which was marketed in a similar manner throughout the country. Once the overcharge has been established, it is reasonable to assume injury or impact upon a showing of proof of purchase. Defendants believe this case is different because of the unique nature of the product and the different modes of purchase. Plaintiffs counter by arguing that if they establish at trial that Defendants engaged in an unlawful national conspiracy which had the effect of stabilizing prices above competitive levels, and further establish they were consumers

of that product, a jury could conclude Defendants' conduct caused injury to each Plaintiff.

Here the gravamen of the complaint is the conspiracy, not individual injury. It is alleged prices were artificially boosted a fixed percentage if the sale was on a cost-plus basis. Proof of injury will consist of some showing by Plaintiff that, as a result of this conspiracy, it had to pay supracompetitive prices for specialty steel piping. Plaintiffs state that they will establish at trial a formula for calculating damages to the individual class members resulting from Defendants' anti-competitive conduct.

Defendants argue that the calculation will be complicated in light of the uniqueness of the product and other market variations; however, they ignore the nature of the conspiracy in which Plaintiffs allege the price-boosting was accomplished by adding the boost directly onto the price that would otherwise have been charged to the end-user. Therefore, in order to prove damages, Plaintiffs will only need to establish the amount of the price-boost, making the arguments based on market and product complexities irrelevant. It appears that if necessary a measure of damages can be established based on a formula that would identify the percentage overcharge by each fabricator during the conspiracy.

Defendants' primary contention is that Plaintiffs cannot prove what they believe they will be able to prove. This Court must not prejudge the merits of a case when deciding the class certification issue. While Plaintiffs may not ultimately be successful they have made a threshold showing sufficient to convince the Court that what proof they offer will be sufficiently generalized in nature that the class action device will provide a tremendous savings in time and effort to the judiciary and to the parties.

Finally, the Court must determine whether the class action is the superior method to deal with this controversy. If the question is close judges should err in favor of class certification because proceeding in this manner protects the judicial system from repetitive litigation. *Horton v. Goose Creek Independent School District,* 690 F.2d 470, 487 (5th Cir.1982), *cert. denied sub. nom.,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983). If the class is not certified it is possible that many claims will not be pursued because litigation costs will exceed the claim for damages. Both sides are well organized and although there are obvious areas of concern, the Court believes such problems can be handled. Even if it is eventually decided that damages must be determined on an individual basis, there are many avenues available. It may be possible to establish a formula for computing damages, or the damage issue could be referred to a Special Master. In neither case would it be necessary to conduct numerous mini-trials on the issue of damages. "Dismissal for management reasons, in view of the public interest involved in class actions, should be the exception rather than the rule." *Manual for Complex Litigation,* Part I § 1.43 n. 72 (1977). After careful review, this Court concludes that the problem of manageability does not warrant a refusal to certify and certification would in fact promote uniformity and insure economies of time, effort and expense.

Assuming, for the purposes of this motion, that a conspiracy existed among the sellers of specialty steel pipe when that product was sold on a cost-plus basis, the class action device offers the only realistic means of redress for the injured purchasers. The Court is satisfied that Plaintiffs understand their burden of proof and that they intend to meet it on a classwide basis, at least as to the existence and impact of the alleged conspiracy. The administrative problems the suit will pose, do not appear to be unsurmountable. Therefore, for the reasons set forth above, it is

ORDERED that Plaintiffs' motion for class certification is GRANTED.

It is so ordered.