Henry and Joann ROZEMA, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

THE MARSHFIELD CLINIC and Security Health Plan of Wisconsin, Inc., Defendants.

Kathleen V. MALEK, State of Wisconsin Department of Health and Family Services, and Plaintiffs,

v.

THE MARSHFIELD CLINIC, Security Health Plan of Wisconsin, Inc., North Central Health Protection Plan, and Rhinelander Medical Center, S.C., Defendants.

Harriet HALIDA, Lawrence Halida, Island Sports Center, Inc., a corporation, Mark McKay, and Town of Mercer Sanitary District # 1, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

THE MARSHFIELD CLINIC, Security Health Plan of Wisconsin, Inc., North Central Health Protection Plan, and Rhinelander Medical Center, S.C., Defendants.

Nos. 96–C–592–C, 96–C–916–C, and 96–C–730–C.

United States District Court, W.D. Wisconsin.

July 18, 1997.

Stephen J. Schooler, Lawton & Cates, Madison, WI, *for Henry Rozema.*

Stephen E. Meili, Center for Public Representation, Madison, WI, for Joann Rozema.

Britt L. Tinglum, Keller Rohrback, L.L.P., Seattle, WA, for Harriett Halida.

Gerard W. Cook, O'Halloran, Kosoff, Helander, Geitner & Cook, P.C., Northbrook, IL, for Kathleen Malek.

Richard Perkins, Assistant Attorney General, Madison, WI, for Wis. Dept. H&SS(96-c–916).

James R. Troupis, Michael, Best & Friedrich, Madison, WI, for Blue Cross–Blue Shield.

Steven J. Caulum, Bell, Metzner, Gierhart & Moore, Madison, WI, for Marshfield Clinic Security Health Plna of Wi., Inc.

Kevin D. McDonald, Jones, Day, Reavis & Pogue, Washington, DC, for Marshfield Clinic (96–C–0730–C).

John M. Loomis, Attorney at Law, Milwaukee, WI, for North Central Health (96–C–730).

Todd R. McEldowney, O'Melia, Schiek & McEldowney, S.C., Rhinelander, WI, for Rhinelander Medical (96–C–916).

Thomas W. Bertz, Anderson, Shannon, Stevens Point, WI, *for Rice Clinic.*

## OPINION AND ORDER

CRABB, District Judge.

These consolidated antitrust cases are currently before the court on plaintiffs' motion for class certification under Fed.R.Civ.P.23. On May 19, 1997, I entered an order in which I reserved ruling on most of the Rule 23 requirements and granted plaintiffs leave to amend their complaint to correct deficiencies in their class allegations. Plaintiffs filed a consolidated amended complaint on June 9, 1997. Defendants The Marshfield Clinic and Security Health Plan, Inc. renewed their opposition to class certification, arguing that plaintiffs cannot prove common impact in their alleged product and geographic markets, have not alleged a single conspiracy with class-wide impact, improperly include health maintenance organization subscribers in their proposed class of direct purchasers of physician services, have not submitted admissible evidence relating to causation and damages, and do not adequately represent the potential class.

Because plaintiffs have made class allegations sufficient to satisfy the requirements of Fed.R.Civ.P. 23, common questions of law and fact predominate over individual questions and a class action appears to be the superior method of adjudication in this case, I am granting plaintiffs' motion for class certification.

For the sole purpose of deciding this motion, I find that plaintiffs' amended complaint fairly alleges the following facts that are new or different from those facts alleged in the initial complaints. *See* Allegations of Fact, Order dated May 19, 1997, Dkt. # 111 (setting out facts alleged in initial complaints).

## ALLEGATIONS OF FACT

Plaintiffs Henry and Joann Rozema are a married couple residing at 10136 Stadt Road, Marshfield, Wood County, Wisconsin. Henry Rozema made a direct unreimbursed payment to The Marshfield Clinic for a cataract condition in 1995 and purchased a medical supplement policy from Security Health Plan, Inc. for the past two years at a cost of $62.50 per month. Joann Rozema has purchased physician services through an individ-

ual health plan policy from Security Health Plan, Inc. since 1992.

Plaintiffs Lawrence and Harriet Halida are a married couple residing at SH 2392 W. Spencer Road, Rt. 1, Loyal, Clark County, Wisconsin. From October 1996 through May 1997, the Halidas paid $289.58 per month for HMO health care services from Security Health Plan, Inc. In May 1997, their premium increased to $579.16 per month.

Plaintiff Islands Sports Center, Inc. is a Wisconsin corporation with a principal place of business located at 824 Highway 51 North, Minoqua, Oneida County, Wisconsin. Island Sports Center has purchased HMO health care services from Security Health Plan, Inc. from approximately March 1995 through the present for its employees.

Plaintiff Mark McKay is an adult resident of Wisconsin, residing at 9813 Sylvan Shore Road, Minoqua, Oneida County, Wisconsin. McKay made direct unreimbursed payments to The Marshfield Clinic for treatment of an ectopic pregnancy of a companion who was residing with him and was pregnant with his child, including: $50.00 on February 4, 1995; $52.34 on March 23, 1995; $50.00 on May 15, 1995; and $150.00 on June 23, 1995.

Plaintiff Kathleen Malek is an adult resident of Wisconsin, residing at 1304 Second Street, Woodruff, Oneida County, Wisconsin. Malek made the following unreimbursed payments for primary and pediatric care from defendants: $239.00 in 1991; $21.80 in 1995; and $25.00 in 1996.

Plaintiffs are suing on behalf of themselves and all purchasers of physician services from defendants The Marshfield Clinic, Security Health Plan, Inc., Rhinelander Medical Center, S.C. and North Central Health Protection Plan (NCHPP) residing in the following eight county area: Clark, Price, Lincoln, Oneida, Marathon, Taylor, Portage and Wood counties. The proposed class excludes the defendants, Blue Cross and Blue Shield United of Wisconsin (including any ASO contracts), Compcare Health Services Insurance Corporation, the United States of America and its agencies, and any and all co-conspirators. Although the exact number of class members is presently unknown to plaintiffs, from data in their possession, they estimate that there are at least 24,000 purchasers of physician services from The Marshfield Clinic who reside in the eight county geographic area. According to data published by Wisconsin Office of the Commission of Insurance, Security Health Plan, Inc. there were approximately 54,000 subscribers in 1991–1992 and 63,000 subscribers in 1995–1996 residing in the eight county geographic area. Plaintiffs allege that they are represented by counsel who are experienced and competent in the prosecution of complex, class action antitrust litigation and in health care law and litigation.

Physician services include services provided by medical doctors and osteopaths and include purchases of prepaid health care maintenance organization (HMO) health care services. Citing *Blue Cross v. Marshfield Clinic,* 65 F.3d 1406, 1409 (7th Cir.1995), plaintiffs define an HMO as basically a method of pricing health care services. Instead of having the patient pay separately for each medical procedure, the patient pays a fixed annual fee for all the services he or she needs and the HMO undertakes to provide those services with the physicians with whom it has contracts. HMO health care services are the comprehensive physician services that are purchased from a panel of providers who have contracted with the HMO. These services are offered to subscribers in exchange for prepaid fixed payments from the subscribers.

Plaintiffs allege that from at least as early as January 1988 and continuing through the present, defendants, the Sisters of the Sorrowful Mother Ministry Corporation and others entered into illegal agreements and a conspiracy to divide markets, customers and territories for physician services and HMO health care services. Plaintiffs are seeking damages only for those purchases made within the applicable statute of limitations, or after July 24, 1990 for the state claims and after July 24, 1992 for the federal claims. They identify the following as evidence and overt acts in furtherance of the conspiracy:

Entry into and enforcement of a "free flow" agreement between NCHPP and The Marshfield Clinic such that physician pro-

viders would not be paid charges without a referral when they opened an office in the other's territory;

Termination by Rhinelander of a proposed affiliation with NCHPP for Oneida County with the understanding and agreement that Rhinelander's affiliation with The Marshfield Clinic would prevent NCHPP from expanding its service area into Oneida and Price Counties, based on an agreement between The Marshfield Clinic and NCHPP not to market services in each other's service areas;

A 1991 agreement that The Marshfield Clinic would not compete with Rhinelander in its service area based on an understanding that The Marshfield Clinic's northern region market was north and west while Rhinelander's market was north and east;

A strategic alliance and partnership between The Marshfield Clinic and Sisters of the Sorrowful Mother Ministry Corporation to develop markets where Sisters of the Sorrowful Mother Ministry Corporation would not compete with The Marshfield Clinic and to assist The Marshfield Clinic in dividing markets, customers and territories with other providers of physician services and HMO health care services; and

An unwritten agreement, beginning at least as early as 1986, between The Marshfield Clinic and NCHPP not to compete for prepaid plan accounts in each other's territories.

As a result of the conspiracy and defendants' acts in furtherance of it, in 1992 Security Health Plan, Inc. had less than 30 percent of the HMO subscribers for Lincoln and Marathon Counties where NCHPP was active but more than 90 percent of the subscribers in the surrounding counties of Oneida, Price, Taylor, Clark and Wood. Data for 1996 show that Security Health Plan, Inc. had approximately 35.5 percent of the HMO subscribers in Lincoln County, 32.2 percent in Marathon County and over 90 percent in Oneida, Price, Taylor, Clark and Wood Counties. Defendants and their co-conspirators have market power for physician services in the eight county area, have prevented the entry of other similarly situated firms, have delayed and excluded potential competitors, control privileges at essential hospitals and control the time required to establish new patient flows and prepaid plans. The alleged division of markets, customers and territories has fixed, raised, maintained and stabilized the price of physician services at artificially high and anti-competitive levels in the eight county geographic area. The costs of physician services are significantly greater in the geographic area in which defendants have market power than in comparable areas in which defendants do not have market power.

## OPINION

In the Opinion and Order dated May 19, 1997, I addressed plaintiffs' motion for class certification. However, because plaintiffs had not provided sufficient information to enable me to determine whether class certification was appropriate under Fed.R Civ.P.23, I granted plaintiffs leave to amend their complaints to address the deficiencies in their class allegations. Specifically, I asked plaintiffs to clarify the following:

1. Whether they intended an overall product market of health care services or separate product markets for individually named services;

2. The boundaries of the relevant geographic market and whether plaintiffs intend class membership to depend on a potential class member's residence or the location of the purchase of physician services;

3. The effect of the relevant statutes of limitations on the proposed class definition;

4. The standing of plaintiffs McKay, Island Sports Center and Malek; and

5. The class size as it relates to the relevant product and geographic markets.

I found that plaintiffs met the commonality requirement of Fed.R.Civ.P. 23(a)(2) but reserved ruling on whether plaintiffs had satisfied the remaining requirements of Rule 23(a) and (b) until plaintiffs defined their proposed class further and responded to the questions posed in the opinion.

Plaintiffs have amended their complaint and redefined their proposed class definition to include the following:

All purchasers of physician services from defendants The Marshfield Clinic, Security Health Plan, Inc., Rhinelander Medical Center, S.C. and North Central Health Protection Plan (NCHPP) in which the patient resides in and the physician services were provided in the following eight county geographic area: Clark, Price, Lincoln, Oneida, Marathon, Taylor, Portage and Wood counties in the State of Wisconsin. The physician services must have been purchased after July 24, 1990. The class excludes the defendants, Blue Cross & Blue Shield United of Wisconsin (the exclusion includes any ASO contracts), Compcare Health Services Insurance Corporation, the United States of America and its agencies, and any and all co-conspirators.

The relevant product market is defined as physician services, which include services provided by medical doctors and osteopaths and prepaid HMO health care services. The relevant geographic market consists of the eight Wisconsin counties identified in the proposed class definition.

I turn to the requirements of Rule 23 and the questions posed in the May 19 opinion.

### A. *Class Definition and Standing*

#### 1. *Standing*

■ In the May 19 opinion, I found that the allegations in plaintiffs' brief were sufficient to establish that the Rozema and Halida plaintiffs are direct purchasers of physician services and as such have standing. However, I reserved ruling on whether these plaintiffs had standing because the allegations in plaintiffs' complaints were deficient. Now that plaintiffs have amended their complaint to add these allegations, I conclude that Henry and Joann Rozema and Lawrence and Harriet Halida have standing.

Plaintiffs' initial factual allegations regarding plaintiffs McKay, Island Sports Center and Malek were not sufficient to allow a determination whether these plaintiffs had standing. However, plaintiffs allege in their amended complaint that plaintiff Island Sports Center, Inc. has purchased HMO health care services for its employees from Security Health Plan, Inc. since approximately March 1995; plaintiff McKay made four direct, unreimbursed payments to The Marshfield Clinic in 1995 for treatment of an ectopic pregnancy of a companion who was residing with him and was pregnant with his child; and plaintiff Malek made three unreimbursed payments (in 1991, 1995, and 1996) to defendants for primary and pediatric care.

Because plaintiffs' amended complaint establishes that plaintiffs Island Sports Center, McKay and Malek are direct purchasers of physician services from defendants, these plaintiffs have standing. Apparently, plaintiffs have decided not to include in their proposed class those purchasers of physician services whose purchases were paid in whole or in part by the Wisconsin Medical Assistance Plan. In their amended complaint, they include only those purchases of plaintiff Malek that were not covered by any state or federal program. As a result, Medical Assistance recipients will not be included in the class.

Defendants reiterate their previous opposition to plaintiffs' standing, arguing that because physician services are merely inputs to HMO health care services, HMOs and not HMO subscribers are the direct purchasers of physician services. Therefore, according to defendants, those plaintiffs who are HMO subscribers are not direct purchasers of physician services and do not have standing. I addressed this argument in my previous opinion on class certification, noting that the fact that some potential class members are HMO subscribers does not mean that they are not purchasers of physician services. *See* Opinion and Order, dated May 19, 1997, Dkt. 111. Plaintiffs allege that HMOs provide patients with a means of prepaying for their physician services and are therefore a means of marketing and selling physician services. This is a logical conclusion given that defendant Security Health Plan, Inc., an HMO, is the wholly owned subsidiary of defendant The Marshfield Clinic. *See Ball Memorial Hospital, Inc. v. Mutual Hospital Insurance*, 784 F.2d 1325, 1329–30 (7th Cir.

1986) (noting that hospitals and or physicians establish HMOs as a means of financing health care). Plaintiffs' allegations are consistent with the court of appeals' holding in *Blue Cross* that HMOs do not constitute a separate market but are basically a method of pricing medical services. See *Blue Cross*, 65 F.3d at 1409 and 1411. Of course, if the evidence shows otherwise at trial or on summary judgment, the HMO subscribers will be dismissed from the suit. However, for class certification purposes, plaintiffs have made a sufficient showing of standing for these potential class members.

### 2. *Relevant product market*

■ In their amended complaint, plaintiffs clarified that they intend an overall product market of physician services and not separate product markets for individually named services. Defendants challenge plaintiffs' alleged product market on the same ground as in their previous briefing on the class certification issue. They argue that plaintiffs' attempt to lump together all services purchased by potential class members under the rubric of physician services fails because there is no basis for concluding that the individual services are linked for purposes of price movement. Defendants also contend that most cases involving physician service markets generally use the specific primary or specialty care services as product markets.

In support of their argument that plaintiffs cannot prove common impact in a product market including a cluster of individual medical services, defendants rely on *United States v. Rockford Memorial Corporation*, 898 F.2d 1278 (7th Cir.1990). In *Rockford*, Judge Posner stated that: "If a firm has a monopoly of product X, the fact that it produces another product, Y, for which the firm faces competition is irrelevant to its monopoly unless the prices of X and Y are linked." *Id.* at 1284. Defendants conclude from this statement that if prices for all physician services are not linked, there can be no generalized or common impact on a class of persons buying a subset of those services. They argue that a competitive event that raises the price of one service may have no impact on the other types of services; the fact that the

services form a cluster market does not mean that there is a link between the prices of the different services.

Defendants are correct that their alleged anti-competitive conduct may not have raised the prices of every type of physician service in the same way. In fact, it may have raised prices for some services and not others or not have raised prices at all. However, at this point, it is sufficient that plaintiffs have alleged a single product market of physician services, including HMO health care services, in which they allegedly can prove that defendants' alleged wrongdoing fixed, raised, maintained and stabilized the prices of all physician services. As noted repeatedly in earlier opinions, the court of appeals has stated that physician services may constitute a separate product market. See *Blue Cross*, 65 F.3d at 1416. In fact, the *Rockford* court approved a product market including all inpatient services of acute care hospitals. See *Rockford*, 898 F.2d at 1284. Because defendants' anti-competitive conduct in this case could affect the prices of all of the individual services as a whole, the use of one relevant market is appropriate.

Although defendants' arguments and supporting references to the evidence are plausible, they are premature and more appropriate for summary judgment or at trial. For class certification purposes, plaintiffs have made a sufficient showing that one market of physician services is appropriate. If necessary, subclasses based on specific primary or specialty care services may be certified at a later point for the calculation of damages (the amount or extent of impact).

### 3. *Relevant geographic market*

■ Because I intend to certify only one class and the Rozema and the Halida and Malek plaintiffs proposed different geographic markets in their initial complaints, I asked them to clarify the boundaries of the relevant geographic market and to state whether they intended class membership to depend on the purchaser's residence or the purchase location. Plaintiffs allege a single eight county area in their amended complaint and appear to base membership both on a class member's residence and his or her purchase of

physician services in the eight county area. Defendants renew their objections to the geographic market, arguing that plaintiffs do not ascribe any economic significance to the eight county area. They argue that plaintiffs' experts reach contradictory conclusions and have not made findings supporting the alleged eight county geographic market.

Plaintiffs allege in their amended complaint that the alleged antitrust violation, injury and damage occurred in the eight county area and that defendants and their co-conspirators have market power in this area. The court of appeals has approved geographic markets consisting of multiple counties in antitrust cases involving the provision of health care. *See Blue Cross,* 65 F.3d at 1411 (noting that either the individual counties or a group of counties where defendants operate would be an appropriate geographic market); *Rockford,* 898 F.2d at 1284–85 (recognizing that a geographic market is hard to define but approving a three county area based on defendants' service area and physician and patient preference for nearby hospitals). Whether plaintiffs' expert reports or other admissible evidence will show that the eight county area is in fact a relevant geographic market is an issue more appropriately determined on summary judgment or at trial.

### 4. *Alleged violation period*

■ In the previous opinion, I asked plaintiffs to clarify the effect of the relevant statutes of limitations on their proposed class definition. Their federal claims are subject to a four-year limitations period, *see* 15 U.S.C. § 15(b), and their state claims to a six-year limitations period, *see* Wis. Stat. § 133.18(2). In their amended complaint, plaintiffs state that they "intend to request damages only for those periods of time within the applicable statute of limitations." Complaint, Para. 9, Dkt. # 119. However, the class definition states that physician services "must have been purchased after July 24, 1990." *Id.* at Para 37. This statement is true only for the state claims, which must be filed within six years. In order to be within the limitations period for the federal claims, any purchases must have been made after July 24, 1992. Because plaintiffs have not suggested certification of two separate classes, one for state and one for federal claims, or shown that potential class members would have both state and federal claims that are not barred by the federal statute of limitations, I am limiting the alleged violation period to four years, or to those purchases made after July 24, 1992.

### B. *Numerosity*

■ Under Rule 23(a)(1), the proposed class must be so numerous that joinder of all members is impracticable. In the previous opinion, I asked plaintiffs to clarify the class size as it relates to the relevant product and geographic markets. Plaintiffs allege in their amended complaint that although they do not know the exact number of potential class members at this time, there are at least 24,000 purchasers of physician services from The Marshfield Clinic who reside and made purchases in the eight county geographic area. They further allege that there were approximately 54,000 subscribers to Security Health Plan, Inc. in 1991–1992 and 63,000 subscribers in 1995–1996 residing in the eight county geographic area. In support of the latter allegation, plaintiffs cite and attach to their complaint data published by the Wisconsin Office of the Commission of Insurance.

Defendants did not challenge plaintiffs' allegations in their opposition and I see no reason to doubt them. As required, plaintiffs have tied their good faith estimates to the relevant product market (physician services, including HMO services) and geographic market (eight county region) and have offered at least some support for their estimates, providing more than mere assertions that defendants are the "principal providers of services" in the relevant geographic market. *See* Opinion and Order, dated May 19, 1997, Dkt. # 111. Given that numerosity problems can be resolved later in the suit, courts can make common sense assumptions in support of numerosity and forcing individual plaintiffs to litigate their own claims seems impracticable and unnecessary, I conclude that plaintiffs have made a sufficient showing that the proposed class will be so

numerous that joinder of all members is impracticable. *See Marcial v. Coronet Insurance Company,* 880 F.2d 954, 957 (7th Cir. 1989); *Arenson v. Whitehall Convalescent & Nursing Home, Inc.,* 164 F.R.D. 659, 662 (N.D.Ill.1996); *Gomez v. Illinois State Board of Education,* 117 F.R.D. 394, 399 (N.D.Ill. 1987).

## C. *Typicality*

In order to satisfy the typicality requirement of Rule 23(a)(3), plaintiffs' claims must arise from the same event, practice or course of conduct; be based on the same legal theory; and have the same essential characteristics as those of the potential class members. *See Retired Chicago Police Association v. City of Chicago,* 7 F.3d 584, 597–98 (7th Cir.1993). I noted in my previous opinion that although individual issues ultimately may affect the determination, I anticipated that the diversity identified by defendants would not prevent a finding of typicality. Plaintiffs' amended complaint has not changed my expectations. As in their earlier briefs, defendants argue that plaintiffs have alleged several different conspiracies in unworkable product and geographic markets. *See* Section E of this opinion for further discussion of individual issues. I did not and do not now find defendants' arguments persuasive. Because plaintiffs' claims arise out of the same alleged course of conduct on the part of defendants and are based on the same legal theory, I conclude that plaintiffs have met the typicality requirement.

## D. *Adequacy of Representation*

Defendants have seized upon the concerns expressed in my previous opinion and assert that plaintiffs are not adequate representatives under Rule 23(a)(4) because there has been "pervasive mishandling of this case by class counsel." Specifically, defendants cite a number of perceived flaws relating to plaintiffs continued reliance on *Blue Cross* and generally criticize counsel's performance throughout this litigation. Many of defendants' concerns relate to strategic choices on the part of plaintiffs' attorneys or the inadequacy of the evidence. Although I share some of defendants' concerns about plaintiffs' past performance, I will not deny class certification for lack of adequate representation on the basis of defendants' assertions that plaintiffs' attorneys are doing a poor job. Plaintiffs have filed an adequate amended complaint, making sufficient class allegations to enable me to certify the proposed class. Further the named plaintiffs appear to have sufficient interest in the outcome of this case and do not have interests antagonistic or conflicting with other members of the proposed class. As a result, I conclude that plaintiffs have satisfied the requirement for adequacy of representation.

## E. *Certification Pursuant to Rule 23(b)(3)*

In the previous opinion and order, I found that Rule 23(b)(3) was the appropriate means of certifying a class in this case. Under Rule 23(b)(3), plaintiffs must show that common questions prevail over individual questions of fact and law and that a class action would be superior to other available methods of adjudication.

Plaintiffs allege in their amended complaint that the following questions of fact and law are common to the proposed class: the existence, duration, illegality, and effect of defendants' alleged anti-competitive conduct; the raising, fixing, pegging, or stabilizing of the prices of physician services; the type and measure of damages sustained by potential class members; and whether the potential class members are entitled to injunctive or declaratory relief. They allege that a class action is the superior method of adjudication because it will permit a large number of injured persons to prosecute their common claims in a single forum simultaneously, efficiently and without unnecessary duplication of evidence or effort. Plaintiffs further allege that a class action will permit those potential class members sustaining smaller damage amounts who could not afford to litigate their claims individually to bring their claims against defendants; class members are readily identifiable from defendants; and the size of the proposed class will not present unusual problems of management or notice.

Repeating essentially the same arguments from their earlier briefs, defendants contend that plaintiffs' allegations of multiple product

markets, geographic markets, and conspiracies create individual questions of law and fact that will predominate over common questions. Defendants also contend that plaintiffs have not suggested the existence of relevant and admissible evidence of class-wide causation and damages, arguing that plaintiffs' experts have not shown that common injury is plausible and have proposed a method for calculating damages that amounts to no method at all. I have discussed the issues relating to the product and geographic markets above, *see* Section A2–3, but will briefly address defendants' concerns with multiple conspiracies and proof of common impact and damages. *See* Opinion & Order dated May 19, 1997 for further discussion of the multiple conspiracy, causation and damage calculation issues.

Plaintiffs allege in their amended complaint that defendants and others entered into illegal agreements and a conspiracy to divide markets, customers and territories. They also allege a series of overt acts in furtherance of the conspiracy. At this point, plaintiffs must show only that the alleged conspiracy is subject to generalized proof and for class certification purposes, must allege a single conspiracy and not separate conspiracies with distinct illegal ends that affected potential class members in different ways. *See In Re NASDAQ Market–Makers Antitrust Litigation,* 169 F.R.D. 493, 518 (S.D.N.Y.1996); *Transamerican Refining Corporation v. Dravo Corporation,* 130 F.R.D. 70, 74 (S.D.Tex.1990); *Abrams v. Interco Inc.,* 93 F.R.D. 331, 332 (S.D.N.Y.1981). Although plaintiffs do allege multiple agreements, they allege one all-inclusive conspiracy with a single unlawful end: the fixing, raising, maintaining or stabilizing of prices of physician services. Therefore, providing plaintiffs can show a single plan, goal or purpose on the part of defendants, they can establish a single conspiracy.

I share defendants' concern regarding plaintiffs' ability to prove an overriding conspiracy or common goal because there apparently is nothing preventing defendant The Marshfield Clinic's co-conspirators from competing with each other. However, all of this is speculation at this point and best left for summary judgment or trial.

Because individual questions of law and fact do not predominate over common questions relating to the alleged violation, injury and damages and a class action appears to be the most efficient and practical means of litigating plaintiffs claims, I will certify the following class of plaintiffs:

All purchasers of physician services from defendants The Marshfield Clinic, Security Health Plan, Inc., Rhinelander Medical Center, S.C. and North Central Health Protection Plan (NCHPP) residing and purchasing physician services in the following eight county geographic area: Clark, Price, Lincoln, Oneida, Marathon, Taylor, Portage and Wood Counties in the State of Wisconsin. The physician services must have been purchased after July 24, 1992. The class excludes the defendants, Blue Cross & Blue Shield United of Wisconsin, any administrative service organization contracts, Compcare Health Services Insurance Corporation, the United States of America and its agencies, and any and all co-conspirators.

### ORDER

IT IS ORDERED that plaintiffs' motion for class certification is GRANTED.