In re PLAYMOBIL ANTITRUST LITIGATION.

Nos. MDL–1116 (JS), 95–CV–2896 (JS).

United States District Court, E.D. New York.

Dec. 30, 1998.

---

Joel Bernstein, Goodkind Labaton Rudoff & Sucharow, New York City, Dan Dracher, Zwerling, Schachter & Zwerling, Seattle, WA, for plaintiff Ellen Steffen.

Phillip J. Sheehe, Simmons, Hart & Sheehe, Miami, FL, for plaintiff Laura M. Clark.

Brian Phillip Murray, Mark W. Gaffney, Rabin & Peckel LLP, New York City, for plaintiff Denise Mortensen.

James K. Stronski, Arent Fox Kinter Plotkin & Kahn, New York City, David T Dekker, Eugene J. Meigher, Fabienne Clemont, Arent Fox Kinter Plotkin & Kahn, Washington, DC, for defendant Playmobil.

## MEMORANDUM AND ORDER

SEYBERT, District Judge.

Pending before the Court is a motion for class certification in this consolidated consumer antitrust action brought for the enforcement of, and participation in, an alleged vertical price fixing conspiracy between Playmobil, USA, Inc. ("Playmobil"), a manufacturer of specialty toys, and its alleged co-conspirators, independent retailers,[1] who sell Playmobil products. Plaintiffs seek treble damages on behalf of themselves and all others similarly situated, for Defendant Playmobil's alleged violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15.

1. The terms retailer and dealer are used interchangeably throughout this Memorandum and Order.

2. Individual complaints naming Playmobil as Defendant were filed as: (1) *Clark v. Playmobil*, filed in the Southern District of Florida, under docket number 2: 96–14002, and upon MDL transfer assigned docket number 96–CV–3937; (2) *Mortensen v. Playmobil*, filed in the District of New Jersey, under docket number 2: 96–109, and upon MDL transfer assigned docket number 96–CV–3938; and (3) *Steffen v. Playmobil*, filed in this District under the now consolidated docket number 96–CV–2896.

## PROCEDURAL BACKGROUND

The gravamen of the complaint is that Playmobil engaged in an unlawful price-fixing conspiracy with various independent retailers throughout the United States to artificially inflate prices of Playmobil products purchased by the Plaintiff Class.

The Plaintiffs allege that Playmobil's violation of the federal antitrust laws continued unabated until, May 1995, when Playmobil ceased its illegal activities as part of a consent decree arising out of a United States Department of Justice investigation. *See United States v. Playmobil USA, Inc.*, No. Civ. 95 0214, 1995 WL 366524, at *1 (D.D.C. May 22, 1995). As a result of the Defendant's wrongful conduct, the Plaintiffs assert that they and the other members of the Class have suffered damages equal to the difference between the anticompetitive price actually paid for Playmobil products and the price that would have been paid in a competitive market.

This action is a consolidation of three cases[2] pursuant to an order of the Multidistrict Panel on Litigation, dated August 7, 1996. In consolidating these actions, the Panel reasoned that "the actions in this litigation involve common questions of fact arising out of allegations that Playmobil conspired to fix the retail prices charged for its products in the marketplace, thereby artificially inflating prices of such products to consumers in violation of the federal antitrust laws." Accordingly, the Multidistrict Litigation Panel centralized the actions for pretrial purposes pursuant to 28 U.S.C. § 1407.[3]

3. It is important to note that in *Carter v. Playmobil*, Laura Carter brought a class action complaint, however, unlike the other consolidated cases, the Southern District of Florida ruled on Carter's motion for class certification and denied the motion without prejudice on August 5, 1996. In so doing, the Court found that plaintiff satisfied the prerequisites of Rule 23(a): (1) that the class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) that the representative party will fairly and adequately protect the interests of the class. The Court, however, denied the motion to certify the

On February 5, 1996, the Plaintiffs moved to certify as a class "all purchasers of any Playmobil products during the period commencing June 13, 1991 through May 31, 1995." On June 9, 1996, after oral argument, this Court denied Plaintiffs' motion for class certification, without prejudice, and granted Plaintiffs leave to file an amended complaint, and to undertake any appropriate discovery regarding determination of proper class representation. The Plaintiffs filed a Consolidated Amended Class Action Complaint dated October 23, 1996. The amended complaint defines the class as follows:

> All persons or entities in the United States [who purchased] of (sic) Playmobil products directly from Defendant or Co-Conspirator Retailers at any time during the period from February 1990 until and including May 22, 1995. Excluded from the Class are Defendant and their (sic) Co-Conspirators, whether or not named as a Defendant in this Complaint, and their respective subsidiaries and affiliates.

Plaintiffs move to be designated class representatives and to have their counsel appointed as class counsel. The sole issue to be decided is whether the proposed class meets the preliminary criteria of Federal Rules of Civil Procedure Rule 23, and specifically the requirements of Rule 23(b)(3).

## FACTUAL BACKGROUND

All citations to the complaint refer to the amended complaint and the following summary is based on the facts as alleged therein. "When deciding a motion for class certification, the court should accept the allegations in the complaint as true, but need not blindly rely on conclusory allegations which parrot Rule 23 requirements." Herbert B. Newberg & Alba Conte, 2 *Newberg on Class Actions* § 7.23 (3d ed.1992) [hereinafter "*Newberg*"] (citing *Jackson v. Rapps,* 132 F.R.D. 226 (W.D.Mo.1990)); *Ventura v. New York City Health & Hosps. Corp.,* 125 F.R.D. 595 (S.D.N.Y.1989); *see also, Transamerican*

*Refining Corp. v. Dravo Corp.,* 130 F.R.D. 70 (S.D.Tex.1990) (stating that "[i]t is not necessary that Plaintiffs prove the merits of their case to establish entitlement to class certification [but][t]he allegations in the complaint, except for those on the issue of class certification, must be assumed to be true when determining if [the] litigation should proceed as a class action.") (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)).

The Plaintiffs allege that commencing in or before February 1990, and continuing at least until May 22, 1995, (hereinafter the proposed "Class Period"), Playmobil and various retailer co-conspirators, engaged in a combination or conspiracy, consisting of a continuing agreement, understanding, and/or concert of action to fix and maintain the resale price of Playmobil products at artificially inflated levels. (Compl.¶ 24.) During the Class Period, Playmobil regularly published a document called "Suggested Retail Price Ranges" for all of Playmobil products. (Compl.¶ 25.) Also during the Class Period, Playmobil, on an annual basis, issued letters to all of its retailers setting forth a "Retailer Discount Policy," (hereinafter the "Policy"). (Compl.¶ 26.) The Policy stated that Playmobil would monitor its retailers and that without discussion, it could refuse to sell to any retailer it determined was discounting the prices of Playmobil products beyond the limits imposed by the Policy. (Compl.¶ 26.)

Although the Policy purported to ensure that dealers in Playmobil products would not engage in (unlawful) resale price agreements, the Plaintiffs assert that the Policy was a "ruse". (Compl.¶ 27.) The Plaintiffs allege that, in actuality, Playmobil ignored these restrictions in its dealings with retailers by engaging in the following conduct: (1) Playmobil personnel, on a repeated basis, contacted retailers who reportedly were discounting below the Policy's "suggested" minimum levels, and pressured them to comply with the unwritten policy of Playmobil to stabilize, fix, or maintain prices at a non-competitive price;

class pursuant to Rule 23(b). The Court noted that Carter failed to address the extent to which litigation commenced by other members of the class preempts certification of this cause of action. In addition, the Court found that plaintiff failed to address the desirability, or undesirability of concentrating the litigation of the claims in the Southern District of Florida. Consequently, the Court denied the motion without prejudice.

and (2) Playmobil secured from the co-conspirator retailers express agreements to follow Playmobil's published retail prices. (Compl.¶ 27.)

Oftentimes, Playmobil's impetus for pressuring retailer compliance with Playmobil's Policy arose from the complaints of other retailers of Playmobil products. (Compl.¶ 28.) In response to these retailer complaints, Playmobil ascertained if the accused Playmobil dealer was discounting beyond the "suggested" limits. (Compl.¶ 28.) If Playmobil determined that the dealer was, in fact, discounting beyond those limits, Playmobil persuasively "discussed" its resale pricing policy with the offending dealer. (Compl.¶ 28.) If, after such discussions, the dealer still refused to raise the prices of Playmobil products to the level mandated by Playmobil, Playmobil ensured ultimate compliance by threatening the retailer with the following possibilities: (1) additional stores in the immediate area might begin carrying Playmobil toys; (2) Playmobil might improperly process orders, with the concomitant resulting occurrence of any of a bevy of shipping problems; and (3) the outright refusal to sell additional Playmobil products to that retailer until after that retailer agreed to adhere to Playmobil's price ranges. (Compl.¶ 28.) By employing these threats, Playmobil was often successful in "persuading" dealers to agree to raise and/or maintain their resale prices at the levels established by Playmobil. (Compl.¶ 28.) Playmobil's success in maintaining adherence to its unwritten pricing policy resulted in Playmobil never having to permanently sever its relationship with retailers because of a dealer's discounting beyond the limits imposed by Playmobil. (Compl.¶ 29.)

In furtherance of this combination and conspiracy, Defendant Playmobil further threatened to terminate retailers: (1) for advertising Playmobil products at prices below the minimum resale prices established by Playmobil; and (2) in order to secure retailers' adherence to the minimum resale prices established by Playmobil and to limit the duration of promotional sales by retailers. (Compl.¶ 30(a) & (b).) Moreover, Playmobil agreed with its retailers on the retail prices for resale of Playmobil products. (Compl.¶ 30(c).)

Although they are not parties to the action, the Plaintiffs further allege that various co-conspirator retailers acted in furtherance of the combination and conspiracy by engaging in the following conduct: (1) agreed to resell Playmobil products at or above the minimum resale prices established by Defendant Playmobil; (2) participated in the enforcement of the agreement to adhere to retail prices established by Playmobil by reporting non-adhering retailers to Playmobil; and (3) requested that Playmobil take affirmative action against those retailers who failed to adhere to the established minimum resale price. (Compl.¶ 31.)

Accordingly, individually and as a Class, the Plaintiffs claim they have been injured in at least three ways: (1) the prices charged for Playmobil products by each of the retailers of Playmobil products to Plaintiffs and the Class have been raised, fixed, maintained and stabilized at artificially inflated and non-competitive levels; (2) they have been deprived of free, open, and unrestricted competition in the establishment of the terms of the prices paid for Playmobil products; and (3) competition in establishing the terms of the prices paid for Playmobil products has been unlawfully restrained, suppressed, or eliminated. (Compl.¶ 32.)

Playmobil opposes the motion for class certification, asserting that Plaintiffs cannot establish either a common conspiracy or common impact, nor can they satisfy their burden of showing that unlawful deviations by Playmobil from its announced policy satisfy the requisites of Rule 23. To the extent the Defendant challenges whether Plaintiffs have sufficiently articulated conduct violative of the antitrust laws, the Court finds that Plaintiffs' allegations, which at this juncture must be accepted at true, do state a valid claim. Having so decided, to the extent Defendant's Memorandum of Law in Opposition to Class Certification hinges on the sufficiency of Plaintiffs' allegations of conspiracy and antitrust violations, it is not germane to the instant certification motion.

The Defendant's opposition to class certification is based on three main premises.

First, the Defendant claims that most of the proposed class members lack antitrust standing because they did not purchase directly from a "co-conspirator" retailer. The second and third premises relate to the requirement of Fed.R.Civ.Proc. 23(b)(3) that, in order to be certified as a class, the Plaintiffs must demonstrate that common issues predominate over questions effecting individual members pursuant to Fed.R.Civ.Proc. 23(b)(3). The Defendant asserts that in as much as the Plaintiffs' liability case is premised upon the alleged coercion by Playmobil of some, and not all, of its approximately 1400 independent retailers, Rule 23(b)(3) has not been satisfied because proof of the alleged conspiracy between Playmobil and its independent retailers requires the discrete examination of Playmobil's interaction with specific retailers. Furthermore, Playmobil argues that, even if Plaintiffs demonstrate both standing and unlawful agreements with individual retailers, any resulting impact is localized and will vary significantly over time and between discrete geographic markets depending upon local competitive conditions. The Defendant also asserts that there is no common formula which will determine whether, and if so to what extent, each individual consumer nationwide was damaged at any time during the five-year class period.

Additionally, the Defendants argue that a class of nationwide purchasers of Playmobil products is inappropriate because Pennsylvania is ineligible to be a class participant having already agreed to be bound by a *parens patriae* settlement between Playmobil and the state. *See Commonwealth of Pennsylvania v. Playmobil USA, Inc.,* No. 1:CV–95–0287, 1995 WL 787518, at *1 (M.D.Pa. Dec.15, 1995). Finally, Playmobil argues that the depositions of the three named Plaintiffs demonstrate their failure to satisfy Fed.R.Civ.Proc. 23(a)'s commonality or typicality requirements and, as such, they cannot act as adequate class representatives. Thus, the Defendant importunes the Court to deny Plaintiffs' motion for class certification.

## II STANDARDS FOR DETERMINING CLASS CERTIFICATION

■ To obtain class certification, a plaintiff has the burden of establishing that each of Rule 23's class certification requirements have been satisfied. *In re Potash Antitrust Litig.,* 159 F.R.D. 682, 688 (D.Minn.1995) (citing *General Telephone Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)); *see also In re Alcoholic Beverages Litig.,* 95 F.R.D. 321, 324 (E.D.N.Y.1982).. When engaging in Rule 23 analysis, the merits of a plaintiff's complaint are not determined. *Eisen,* 417 U.S. at 177, 94 S.Ct. at 2152 ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.").

■ Antitrust claims are well suited for class actions. First, as stated in *Shelter Realty Corp. v. Allied Maintenance Corp.,* 75 F.R.D. 34 (S.D.N.Y.1977):

> The treble-damages provision of the Clayton Act, 15 U.S.C. § 15, was designed to encourage private enforcement of the antitrust laws by offering generous recompense to those harmed by the proscribed conduct and simultaneously to erect a deterrent to those contemplating similar conduct in the future. . . . These linked objectives cannot be fully realized if large numbers of potential claimants are not afforded an efficient and cost-effective method of vindicating their claims. The class action device is well-suited to afford the desired access.

*Id.* at 38.

Second, where the consuming public is harmed by price-fixing activity, the public interest demands redress, and Congress has clearly decreed that punishment in the form of treble damages is appropriate for violations of the Sherman Act. A class action may be the most fair and efficient means of enforcing the law where antitrust violations have been continuous, widespread and detrimental, to as yet, unidentified consumers. In fact, sometimes a class-action lawsuit is the only way in which consumers would know of their rights at all, let alone have a forum for their vindication. *Coleman v. Cannon Oil Co.,* 141 F.R.D. 516, 520 (M.D.Ala.1992).

Third, class actions are often appropriate when it would be unlikely for individual plaintiffs to pursue the claims separately. *See Rios v. Marshall,* 100 F.R.D. 395, 409 (S.D.N.Y.1983) ("the relatively small amount likely in any individual recovery, the availability of treble damages notwithstanding, renders certification of a plaintiff class in this action particularly appropriate"); *In re Master Key Antitrust Litig.,* 528 F.2d 5, 10 (2d Cir.1975) (class action determination is fundamental when the individual damage claim of the class representative is insubstantial and the suit would unlikely be continued as a private action).

Because of the important role that class actions play in the private enforcement of antitrust actions, courts resolve doubts in favor of certifying the class. *In re Control Data Corp. Sec. Litig.,* 116 F.R.D. 216, 219 (D.Minn.1986). District courts, however, ultimately retain broad discretion to determine whether or not to certify a class under Rule 23. *Potash,* 159 F.R.D. at 689 (citing *Falcon,* 457 U.S. at 161, 102 S.Ct. at 2372).

In determining whether to certify a proposed class, "court[s] should rely on well-pleaded facts alleged in the complaint." *Newberg,* § 7.02. "Since Rule 23 is generally required to be liberally construed, these presumptions, arising at an early stage of the litigation, are invoked for the most part in favor of upholding the class." *Id.* at § 7.17. A well-pleaded complaint shifts the burden of disproving class facts to the party opposing the class. *Id.* at § 7.23.

However, the "[p]laintiff has the burden of convincing the Court that the mandatory requirements of [class certification] have been satisfied." *Greeley v. KLM Royal Dutch Airlines,* 85 F.R.D. 697, 700 (S.D.N.Y. 1980). Thus, although the merits of antitrust claims should not be preliminarily determined when ruling upon class certification, class certification nevertheless requires "rigorous analysis" of each of Rule 23's prerequisites. *Potash,* 159 F.R.D. at 688.

Accordingly, to prevail on the instant motion for class certification, Plaintiffs must satisfy the elements of Rule 23(a). In relevant part, the rule governing the prerequisites for class action provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.Proc. 23(a).

1. Class So Numerous that Joinder is Impracticable

Turning to the first prerequisite, the Plaintiffs must establish that the class is so numerous that joinder of all members is impracticable. *See In re Disposable Contact Lens Antitrust Litig.,* 170 F.R.D. 524, 528–29 (M.D.Fl.1996). A finding of numerosity may be supported by common sense assumptions, and it is especially appropriate in antitrust actions brought under Rule 23(b)(3). *See* 4 *Newberg* § 18.03 n. 17 (2d ed.1985). It is not necessary to determine the precise number of class members in order to certify a class. *See Alcoholic Beverages,* 95 F.R.D. at 324 ("The fact that the size of the proposed class has not been exactly determined is not a fatal defect in the motion; a class action may proceed upon estimates as to the size of the proposed class."). Additionally, "[w]here the moving party alleges the existence of potential class members yet to be identified, joinder is considered particularly impracticable." *State of New York v. Salem Sanitary Carting Corp.,* No. CV–85–0208, 1989 WL 86997, at *1 (E.D.N.Y. July 24, 1989).

A class of the number involved in this action easily satisfies the Rule 23(a)(1) numerosity requirement that joinder be impracticable. Here, purchasers of Playmobil products are geographically dispersed throughout the United States. Playmobil operates in New Jersey, and distributes its products to retailers throughout the United States. (Compl.¶ 15.) With over 1,400 retailers of Playmobil products, the class obviously has at least 1,400 members, assuming

that each retailer participated in the alleged scheme and has at least one customer. Of course, Plaintiffs do not allege that each and every retailer was involved in the scheme, nonetheless, those retailers involved invariably sold to more than one customer, and Plaintiffs do allege that all customers were adversely affected.

Thus, while the Court cannot—and need not—determine the precise number of class members, common sense dictates that the purchasers are amply numerous. Accordingly, the numbers of consumers who purchased Playmobil products from retailers throughout the country comprises a class significant in size to make individual joinder impracticable, and sufficient to warrant class treatment, fulfilling the numerosity requirement. *See, e.g., Rios,* 100 F.R.D. at 404 (finding three subclasses comprised of 386 individuals, 225 individuals and 3,500 individuals, "plainly satisfie[d] the numerosity requirement of Rule 23(a)(1)."); *Alcoholic Beverages,* 95 F.R.D. at 324 ("finding that the defined class [of 2,000] satisfied the numerosity requirement"); *In re Aluminum Phosphide Antitrust Litig.,* 160 F.R.D. 609, 613 (D.Kan.1995) (noting that "hundreds of customers dispersed geographically throughout the United States" satisfied the numerosity requirement).

### 2. Questions of Law or Fact Common to the Class

As for the second prerequisite, the Plaintiffs must establish that there are questions of law or fact common to the class. Courts take a common sense approach to the Rule 23(a)(2) commonality and Rule 23(b)(3) predominance requirements by recognizing that some factual variation among class members' specific grievances will not prevent certification of claims on behalf of a class of plaintiffs. *See Contact Lens,* 170 F.R.D. at 529 (M.D.Fla.1996) (This provision [Rule 23(a)(2) ] does not require a complete identity of legal claims. Rather the requirement is usually satisfied if all class members are in a substantially identical factual situation and the questions of law raised by the plaintiff are applicable to each class member.) (internal citations and quotations omitted); *see also Marisol A. v. Giuliani,* 126 F.3d 372,

377 (2d Cir.1997) (affirming class certification where the district court aggregated all of plaintiffs' claims into an abstract "super-claim" based on defendants' unitary course of conduct).

It is well established that class actions are particularly appropriate for antitrust litigation concerning price-fixing schemes because price-fixing presumably subjects purchasers in the market to common harm. *See In re Plastic Cutlery Antitrust Litig.,* No. 96–CV–728, 1998 WL 135703, at *2 (E.D.Pa. Mar.20, 1998). "[P]rice-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *In re Sugar Indus. Antitrust Litig.,* 73 F.R.D. 322, 335 (E.D.Pa.1976).

Particularly where the complaint sets forth allegations of price-fixing, courts generally find that there are questions of law and fact common to the class. As Judge Sifton wrote: "The very nature of the case—involving allegations of antitrust conspiracy among defendants—appears to insure that the commonality requirement is satisfied." *Alcoholic Beverages,* 95 F.R.D. at 324; *see also Salem Sanitary Carting,* 1989 WL 86997, at *1 ("common question predominates as to whether the members of the class were injured by a single conspiracy"); *Uniondale Beer Co., Inc. v. Anheuser–Busch, Inc.,* 117 F.R.D. 340, 342 (E.D.N.Y.1987) ("common questions of fact exist as to the existence and scope of this alleged [price fixing] conspiracy"); *Potash,* 159 F.R.D. at 689 ("Insofar as Plaintiffs allege that Defendants engaged in a conspiracy to fix the wholesale price of potash, they have satisfied the commonality requirement of Rule 23(a)."); *In re Catfish Antitrust Litig.,* 826 F.Supp. 1019, 1034 (N.D.Miss.1993) ("Antitrust price fixing conspiracies, by their nature, raise common questions of fact and law about the existence, scope, and effect of the alleged conspiracy.").

The questions of law that arise involve proof of the three prima facie elements of an antitrust violation, which are: (1) an antitrust violation; (2) causation, i.e., the plaintiff suffered antitrust injury as a result of the violation; and (3) the amount of damages. *See e.g., American Bearing Co., Inc.*

*v. Litton Indus., Inc.* 729 F.2d 943, 948 (3d Cir.1984) (setting forth three prima facie elements for a claim under section 1 of the Sherman Act). To certify a class, plaintiff must demonstrate that the antitrust violation and fact of injury can be proved by common evidence. *Glictronix Corp. v. American Tel. & Tel. Co.,* 603 F.Supp. 552, 586 (D.N.J.1984) (citing *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 454–55 (3d Cir.1977)); *see also Master Key,* 528 F.2d at 12 n. 11.

 Here, Plaintiffs allege that Defendant engaged in a vertical agreement or conspiracy with retailers to regulate the prices of Playmobil toys, maintain such prices at artificially high levels, stifle price competition in Playmobil products, and thereby earn unconscionably large profits at the expense of consumers. The complaint specifically details the common questions of law and/or fact which exist as to all Class members:

(1) whether Playmobil and its co-conspirator retailers conspired, contracted, or combined between and among themselves and with others, to establish retail price maintenance policies, thereby fixing the retail prices charged for Playmobil products; (2) whether Playmobil and its co-conspirator retailers took actions to conceal the unlawful conspiracies, contracts, or combinations described herein; and (3) whether Playmobil's illegal conduct caused injury to the business and property of Plaintiffs and the Plaintiff Class, and if so, the proper measure of damages.

(Compl.¶ 18.) Similar allegations were held sufficient to support a finding of commonality. *See In re NASDAQ Market–Makers Antitrust Litig.,* No. 94 Civ. 3996, 1996 WL 683605 at *13, *14 (S.D.N.Y. Nov.26, 1996) ("Numerous courts have held that allegations concerning the existence, scope, and efficacy of an alleged antitrust conspiracy present important common questions sufficient to satisfy the commonality requirement of Rule 23(a)(2)."); *see also Rivera v. Fair Chevrolet Geo Partnership,* 165 F.R.D. 361, 363 (D.Conn.1996) (finding typicality and commonality requirements met where the same legal theory is asserted for the entire class arising from defendants' same practice or course of conduct).

There can be little dispute that the foregoing issues raised by Plaintiffs are common to all in the Class and predominate over any questions solely affecting individual members of the Class, and as such, the Court finds that there are common questions of law and fact. Moreover, the Court notes that the commonality requirement is further demonstrated by the fact that the MDL Panel found that the actions in New York, New Jersey and Florida all involve common questions of law and fact. Accordingly, Plaintiffs have satisfied the second prerequisite.

3. Claims or Defenses of the Representative Parties are Typical of the Claims or Defenses of the Class

 As for the third prerequisite, Plaintiffs must show that the claims or defenses of the representative parties are typical of the claims or defenses of the class. The typicality requirement is satisfied if the representative plaintiff's claims are based on the same legal theory and arise from the same practice or course of conduct as the other class members. *Alcoholic Beverages,* 95 F.R.D. at 324 (Rule 23(a)(3) is satisfied when the claims are "based on the same legal or remedial theory and there are no antagonistic interests between the two groups."); *Salem Sanitary Carting,* 1989 WL 86997, at *2 ("a plaintiff's claim meets the typicality requirement if it arises from the same course of conduct that gives rise to the claims of other class members"); *In re Domestic Air Transp. Antitrust Litig.,* 137 F.R.D. 677, 698 (N.D.Ga. 1991) (typicality is satisfied if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members).

 Moreover, claims in antitrust price-fixing cases generally satisfy Rule 23(a)(3)'s typicality requirement, even if members purchase different quantities and pay different prices. *Potash,* 159 F.R.D. at 691. Thus, "[t]ypicality in the antitrust context will be established by plaintiffs and all class members alleging the same antitrust violations by the defendants." *Estate of Garrison v. Warner Bros., Inc.,* No. CV 95–8328, 1996 WL 407849 at *2 (C.D.Cal. June 25, 1996). If a central conspiracy is established, differences

in the way in which the plan was manifested are unimportant. *Rios,* 100 F.R.D. at 407; *see also Alcoholic Beverages,* 95 F.R.D. at 324 (fact that liquor and wine industry is complex and there are numerous products with varying prices and conditions of sale and different purchasing patterns does not mandate a finding of lack of typicality).

■ Typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff. Personal traits or variables such as sophistication or choice of retail outlet are irrelevant to the typicality criterion. As one court noted: "there is nothing in Rule 23(a)(3) which requires named plaintiffs to be clones of each other or clones of other class members." *Catfish,* 826 F.Supp. at 1036. Additionally, the typicality requirement may be satisfied even if some named plaintiffs did not purchase throughout the entire period. *Alcoholic Beverages,* 95 F.R.D. at 325.

■ Here, the claims of the Plaintiffs and the other Class members arise from the same events, the same continuous practices and alleged uniformly anti-competitive course of conduct engaged in by Playmobil and the retailers, carried out pursuant to a purported overall scheme to create an unlawful vertical combination, or conspiracy. The representative Plaintiffs' claims are typical of the claims of the members of the Class, because, like all members of that Class, the complaint asserts that they purchased Playmobil toys from retailers who charged an anti-competitive, established price set by Playmobil in a conspiracy with retailers during the Class Period.

■ Differences in the damages sustained by individual class members does not preclude a showing of typicality, nor defeat class certification. *See, e.g., In re Lloyd's American Trust Fund Litig.,* No. 96 CIV. 1262, 1998 WL 50211, at *7 (S.D.N.Y. Feb.6, 1998) (class certification is not affected by potential lack of damages incurred by class representative); *Maywalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. 51, 56–57 (S.D.N.Y.1993) (finding that "the differences regarding damages among class members is not sufficient to defeat class certification [where the] underlying facts giving rise to

[the] action are the same and ... the 2 claims ... are based on identical legal theories.").

Accordingly, Plaintiffs' claims meet the typicality requirement of Fed.R.Civ.P. Rule 23(a)(3).

4. Representative Parties will Fairly and Adequately Protect the Interests of the Class

■ The fourth prerequisite requires the Plaintiffs to establish that the representative parties will fairly and adequately protect the interests of the class. To insure that the representative parties fairly and adequately protect the class' interests, the Court must be certain that: (1) the class representative's interests are not antagonistic to other class members and the class representative's character assures a vigorous prosecution; *see Alcoholic Beverages,* 95 F.R.D. at 325 ("the likelihood of divergent interests between past and present customers is of greatly reduced import and unlikely to cause a schism in the class."); *see also Shelter Realty,* 75 F.R.D. at 39 ("The likelihood of conflict between past and present customers of the defendant seems more imagined than real"); and (2) the class representative's counsel possesses the competence to undertake the litigation. *See Alcoholic Beverages,* 95 F.R.D. at 325 (Rule 23(a) "has been interpreted to embrace ... the competence of the legal counsel").

A. Class Representative's Interests Must Not be Antagonistic to Other Class Members and Representative Must Aggressively Pursue the Litigation

■ Courts do not require the representative plaintiff to be the best of all possible plaintiffs or to be especially knowledgeable, intelligent, or possessing a detailed understanding of the legal or factual basis on which a class action can be maintained. *See. e.g., Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 366, 86 S.Ct. 845, 847, 15 L.Ed.2d 807 (1966). The *Uniondale Beer* court phrased it as follows:

We find from the evidence submitted that the named plaintiffs have a sufficient knowledge and understanding of the lawsuit to indicate their interest and intent

vigorously to prosecute it. As stated by the Honorable Leonard Wexler under similar circumstances: "The law does not require the named plaintiff to possess an extensive knowledge of federal securities law ... or even complete familiarity with all of the particulars of the pending lawsuit. It is enough that the class representative is aware of the basic facts underlying the lawsuit as alleged in the complaint...."

117 F.R.D. at 343–44 (quoting *Michaels v. Ambassador Group Inc.*, 110 F.R.D. 84, 90 (E.D.N.Y.1986)). The *Catfish* court is in accord, stating:

> An antitrust litigant is not expected to appreciate the finer points of the Sherman Act, Clayton Act, or the Federal Rules of Civil Procedure governing class certification. To require the class representative to be sophisticated and knowledgeable enough to help counsel in this quest would reduce the class action device, especially in complicated antitrust cases, to an impotent tool.

826 F.Supp. at 1037; *see also Aluminum Phosphide*, 160 F.R.D. at 614 ("Rule 23 does not require class antitrust litigants to possess detailed knowledge of their lawsuit and be totally aware of all of the facts concerning the claims in issue.").

 All three named Plaintiffs have testified at depositions in this case and have evidenced an adequate layman's understanding of what this case is all about. (*See* Steffen Dep. at 62:10–20, 69:2–9, 72:2–3; Clark Dep. at 8:21–25, 58:13–18, 67:12–15; Mortensen Dep. at 26:14–17, 40:20–23.) Furthermore, all three are actively involved in the case, having reviewed the complaint, interrogatories, and document requests, and have responded to discovery requests and appeared for depositions.

One court has summarized the adequacy requirement thusly: "Absent any conflict between the interests of the representative and other purchasers, and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed." *Guarantee Ins. Agency Co. v. Mid–Continental Realty Corp.*, 57 F.R.D. 555, 565 (N.D.Ill. 1972).

Plaintiffs have no antagonistic or conflicting interests with members of the Class, and the record is devoid of an indication of extant conflicts of interest. The Plaintiffs are committed to prosecuting the case as evidenced by their active participation, and are adequate representatives of the Class.

Moreover, the fact that Plaintiffs purchased only a small portion of the products whose prices were anti-competitively established, and from only certain retailers and not all co-conspirator retailers, does not render the Plaintiffs inadequate representatives of the Class as a whole. As the Southern District has stated in *In re Industrial Diamonds Antitrust Litigation:*

> Where the plaintiffs have alleged a single conspiracy to artificially inflate prices, a representative plaintiff may satisfy the adequacy requirement without having purchased products from all of the defendants, having bought all of the affected products or having made purchases throughout the entire class period. The crucial inquiry is not how many of defendants' products each plaintiff purchased, but rather whether each plaintiff has sufficient incentive to present evidence that will establish the existence of the alleged conspiracy and its effect on the prices of the products purchased by the putative class members. [citations omitted].

167 F.R.D. 374, 381 (S.D.N.Y.1996).

Defendant also challenges the class representatives' financial capacity to incur the costs of the expenses of the litigation. Although prior precedents required named class representatives to ultimately assume all costs incurred, more recently, however, alternative methods of ensuring that adequate funds exist to bring and maintain the class action suit have been approved by the courts. So, in a typical situation, plaintiff's counsel agrees to advance all necessary costs, and, in the event the suit is unsuccessful, the class representative agrees to pay his or her pro rata share of costs. *See, e.g., Rand v. Monsanto Co.*, 926 F.2d 596 (7th Cir.1991) (holding that plaintiff need not be willing to bear all costs); *Lopez v. Orlor Inc.*, 176 F.R.D. 35

(D.Conn.1997) (finding plaintiff's willingness to pay pro rata share of expenses sufficient); *Harrison v. Great Springwaters of America Inc.*, No. 96–CV–5110, 1997 WL 469996, at *8 (E.D.N.Y. June 18, 1997) (named plaintiff only required to pay for pro rata share of costs); *Rivera*, 165 F.R.D. at 365 (finding plaintiff need only show willingness to pay pro rata share of expenses).

Some courts have allowed counsel to assume ultimate responsibility for all costs. *See, e.g., Walco Inv. v. Thenen*, 168 F.R.D. 315, 328 (S.D.Fla.1996) (holding costs may be advanced by counsel); *Margolis v. Caterpillar Inc.*, 815 F.Supp. 1150, 1154 (C.D.Ill.1991) (finding attorney can agree to cover costs if suit is unsuccessful); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 53 (S.D.N.Y.1987) (finding defendant's contention that plaintiff is inadequate class representative for financial reasons "irrelevant since plaintiff has testified in a deposition that counsel is advancing costs"); *Kamens v. Horizon Corp.*, 81 F.R.D. 444, 446 (S.D.N.Y.1979) (finding Rule 23 requires only that there be no factors present which cast doubt on plaintiffs' ability to reimburse counsel, such as pending bankruptcy or financial distress).

 In New York, however, the client must remain ultimately responsible for costs, but, those costs may be apportioned amongst all class plaintiffs. *See* 22 N.Y.C.R.R. § 1200.22 (Disciplinary Rule 5–103(B) of the New York State Lawyer's Code of Professional Responsibility provides that lawyers may advance the costs of litigation to a client as long as the client remains ultimately liable.); *see also Weber v. Goodman*, 9 F.Supp.2d 163, 172–74 (E.D.N.Y.1998) (denying class certification because plaintiff's counsel refused to comply with D.R. 5–103).

Although Defendant herein cites to deposition testimony of the named class representatives in which they disavow financial responsibility for the costs of the litigation, they appeared to have been under the assumption that it was an all or nothing proposition. Accordingly, the named class representatives will have to submit affidavits acknowledging financial responsibility for their pro rata share of the costs and expenses of this lawsuit.

**B. Class Representative's Counsel Must Possess the Competence to Undertake the Litigation**

The Plaintiffs' law firms as Class Counsel will continue to fairly and adequately protect the interests of the Class. As set forth in greater detail in the firm resumes attached to the Drachler Affidavit for the law firms: (1) Zwerling, Schachter & Zwerling, LLP; (2) Goodkind Labaton Rudoff & Sucharow; (3) Burt & Pucillo; (4) and Rabin & Peckel LLP, which all have extensive familiarity with the prosecution of complex litigations, class actions and specifically, antitrust litigations. (*See* Drachler Aff.Exs. D–G.) This is further borne out by counsels' submissions and conduct to date before this Court.

As a result, plaintiff has satisfied the prerequisites of Rule 23(a).

## III REQUIREMENTS OF RULE 23(b)(3)

Along with satisfying the requirements of Rule 23(a), one of three requirements of Rule 23(b) must be met. Plaintiffs rely upon Rule 23(b)(3) which provides:

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

1. Questions of Law or Fact Common to Class Members Predominate

 Plaintiffs must establish that questions of law or fact common to the members

of the class predominate any question affecting only individual members. The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions to render the class action valueless. *See Milberg v. Lawrence Cedarhurst Fed. Sav. & Loan Ass'n,* 68 F.R.D. 49, 52 (E.D.N.Y.1975).

█ Here, the predominant issue is whether Playmobil's course of conduct results in liability, not whether each retail customer purchased a toy from a participating co-conspirator. Still, Plaintiffs must demonstrate that the violation and fact of injury can be proved by common evidence for the entire class. *Glictronix,* 603 F.Supp. at 586 (citing *Bogosian,* 561 F.2d at 454–55).

█ Defendant first challenges whether the suggested named class representatives have standing to bring an antitrust action, stating that it is necessary to show that the Plaintiff was a purchaser directly from a "co-conspirator retailer." In support of this position Defendant cites to *Gross v. New Balance Athletic Shoe, Inc.,* 955 F.Supp. 242 (S.D.N.Y.1997). *Gross* arose in the context of a motion to dismiss, not a class certification motion, and the court therein did indeed find a lack of standing as pled, and granted plaintiffs leave to replead. In the instant motion, the existence of standing is not determinative, because, a motion for class certification concerns whether class action treatment is appropriate. Moreover, Plaintiffs' complaint defines "Retailer" as one who "purchased or otherwise acquired Playmobil products for resale to consumers, .... Although not made defendants herein, such Retailers have participated with Defendant Playmobil in the conspiracy charged herein and performed acts and made statements in furtherance of it. Retailers are also referred to herein as 'Co–Conspirators.'" (Compl.¶ 8.) Accordingly, Plaintiffs have, in effect, accused all retailers of being co-conspirators, and therefore, all class representatives made purchases, as did the entire class, from co-conspirator retailers. *Gross* goes on to hold that plaintiffs need not specifically identify alleged co-conspirators. *Gross,* 955 F.Supp. at 247.

█ As mentioned above, to prevail on a price-fixing claim, a plaintiff must demonstrate (1) an antitrust violation; (2) antitrust "impact" or "injury in fact" was suffered; and, (3) the amount of damages. *American Bearing Co.,* 729 F.2d at 948; *see Industrial Diamonds,* 167 F.R.D. at 381.

With respect to the first element, there is no doubt that Plaintiffs will present common proof regarding the existence and scope of the alleged conspiracy between Playmobil and its retailers. *See Industrial Diamonds,* 167 F.R.D. at 381. Here, Plaintiffs alleges that Playmobil had an agreement with retailers to fix the retail prices for its products throughout the country. While Plaintiffs acknowledge that there is no allegation that Defendant and retailers met together and conspired to raise resale prices, the Court finds that Plaintiffs has alleged a scheme that would be proven by evidence common to the class. *See Uniondale Beer,* 117 F.R.D. at 344 (existence of alleged horizontal conspiracy and damage allegations are common issues that predominate); *Kendler v. Federated Dep't Stores, Inc.,* 88 F.R.D. 688, 692 (S.D.N.Y.1981) (allegations of price-fixing often are sufficient to establish a predominance of common questions); *Sugar Industry,* 73 F.R.D. at 345 (allegedly unlawful horizontal price-fixing arrangement comprises predominating, unifying common interest).

Moreover, Defendant's reliance on *Abrams v. Interco Inc.,* 719 F.2d 23, 29–30 (2d Cir. 1983), in which the Second Circuit affirmed the district court's denial of class certification, is misplaced. In *Abrams,* plaintiff filed a complaint on behalf of a class of all purchasers of Interco products nationwide over the course of four years. *Id.* at 25. Interco manufactured Florsheim shoes, Thayer McNeil shoes, London Fog raincoats, and many other men's, women's and children's footwear and wearing apparel. *Id.* Although the FTC and Interco entered into a consent agreement requiring it to cease engaging in a variety of alleged price-fixing activities, the agreement was limited to sales with independent retailers and did not affect Interco's practices in the stores it owned. *Id.*

This case is distinguishable from *Abrams,* in part, because of the breadth of products

identified as violative of the antitrust laws. In *Abrams,* the "class which plaintiffs sought to have certified was not limited to purchasers of Florsheim and Thayer–McNeil shoes but included purchasers of scores of other product lines," *id.* at 30, notwithstanding that the class representatives' purchases only involved Florsheim and Thayer–Michael shoes from Interco-owned outlets. *Abrams v. Interco Inc.,* 93 F.R.D. 331, 331 (S.D.N.Y.1981).

In this case, Plaintiffs' purchases were limited to Playmobil toy products, and the other potential class members' purchases were similarly limited to Playmobil toy products from nationwide retailers. The *Abrams* court qualified its decision to deny class certification:

> [w]e do not have to go so far as Interco would have us, namely to hold that in order to support damage recovery by a nationwide class plaintiffs would be obliged to show conduct by Interco violating *Parke Davis* with respect to each of its 3500 dealers; proof of patterns of conduct or frequent practices would justify, at least in the absence of rebuttal, an inference that these were generalized.

*Id.* at 29–30. Here, the proof of the violation would be common to the class. Further, Defendant's reliance on the rationale of *Kendler* is equally misplaced. In *Kendler,* the court denied class certification and distinguished three similar cases cited by the plaintiffs, because therein, in part, there were uniform prices and mark-ups established, whereas plaintiffs' allegations did not aver that Bloomingdales and its co-conspirators actually set, fixed or predetermined prices. *Id.,* 88 F.R.D. at 692. In the instant case, as claimed, prices were predetermined, while any variance or discounting was strictly controlled, and compliance thereto allegedly involved behavior violative of the Sherman Act.

Next, the Court must determine whether proof of impact or injury also is common to the class. Some courts have held that "as a general rule, an illegal price-fixing scheme presumptively impacts upon all purchasers of a price-fixed product in a conspiratorially affected market." *Alcoholic Beverages,* 95 F.R.D. at 327 (internal quotations omitted); *see also Lloyd's American Trust Fund,* 1998 WL 50211, at *14. Other courts, however, have required a more detailed analysis. *Industrial Diamonds,* 167 F.R.D. at 382 (citing cases that have required a more detailed analysis).

In the instant action, Plaintiffs allege that the prices were uniformly and artificially maintained at an inflated price. Moreover, Plaintiffs allege that the class has been deprived of free, open and unrestricted competition in price terms because such competition has been unlawfully restrained.

The analysis in *Industrial Diamonds* is relevant herein. The court addressed, in depth, defendant GE's contention "that the wide variety of products sold by defendants, the large number of transactions during the class period and the prevalence of individually negotiated prices render common proof of impact impossible." Turning to the analysis in *Alcoholic Beverages,* which looked to dictum in *Master Key* in which the Second Circuit stated "if the class plaintiffs in that case could establish that the defendants had engaged in a conspiracy that stabilized prices at supracompetitive levels and could show that each class member purchased the affected product, a jury could reasonably conclude that each class member suffered some injury as a result of the conspiracy." *Industrial Diamonds,* 167 F.R.D. at 382 n. 7 (citing *Master Key,* 528 F.2d at 12 n. 11). Judge Conner ultimately concluded that "despite the wide range of products and prices involved, common proof of impact is possible on behalf of purchasers who bought list-price products." *Id.* at 383. Here, proof of impact and injury will be common to the class, as retailers were mandated to sell at or above list-price.

Additionally, if members of the class suffered varying amounts in damages, this does not interfere with establishing a class action. *See, e.g., Uniondale Beer,* 117 F.R.D. at 344 ("the fact of differing damages for each class member, ultimately requiring individualized proof, does not bar a finding that common questions predominate.") (citing *Alcoholic Beverages,* 95 F.R.D. at 327 ("the fact that each class member's damages will be different and, thus, will require individualized

treatment does not prevent one from concluding that common questions predominate.")); *see also Plastic Cutlery,* 1998 WL 135703, at *7 (accepting generalized proof to establish predominance for class certification purposes); *Lloyd's American Trust Fund,* 1998 WL 50211, at *14 (although whether a particular class member's losses were caused by defendant's culpable conduct may ultimately need to be determined, it will not defeat class certification); *Contact Lens,* 170 F.R.D. at 531 (rejecting defendants' argument that generalized proof could not be used to prove impact in a vertical antitrust conspiracy claim); *Transamerican,* 130 F.R.D. at 74 (certifying class in antitrust price-fixing conspiracy wherein predominance is susceptible of generalized proof).

Defendant challenges Plaintiffs' showing of impact through the respective testimony and affidavits submitted by the experts for both sides. Although the disparities in the conclusions reached by the experts may be caused, in part, by the quality of the analyses, the divergence does not necessitate a denial of class certification, or a finding of antitrust impact. Plaintiff's expert, Gary Leslie French, has met the minimum burden of showing there is a reasonable probability of establishing that Playmobil's alleged practices had a common impact on the class members.

As in most instances, the battle of the experts is properly left for the trier of fact to determine. *See In re Sumitomo Copper Litig.,* 182 F.R.D. 85, 91 (S.D.N.Y.1998) (finding expert's testimony "deficiency is a matter to be ascertained by trial and not for a determination as to the appropriateness of class certification"); *Industrial Diamonds,* 167 F.R.D. at 384 ("We need not consider [expert's affidavit] in detail, as it is for the jury to evaluate this conflicting evidence and to determine what weight to give the expert's conclusions.") (internal citations omitted); *In re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. 493, 522 (S.D.N.Y.1996) ("The Court need not decide at [the class certification] juncture what [economic methodologies are] best suited to the particularities of this case."); *Potash,* 159 F.R.D. at

696–97 (finding battle of experts should not be resolved at the class certification stage).

Accordingly, the Court finds that the alleged pricing structure to regulate prices of Playmobil products, to maintain prices at artificially high levels and to hinder price competition involves common issues that predominate.

### 2. Superiority of Class Action

The final criterion that the Court must consider is whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). In making this determination, the Court must consider four factors: (1) the interests of the class members in individually controlling actions; (2) any litigation already commenced by class members; (3) the desirability of concentrating the litigation in this District; and (4) the difficulties likely to be involved in the management of a class action. *See id.*

The Supreme Court recently addressed the advantage of class action suits in aggregating individual claims, quoting a Seventh Circuit opinion: " 'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.' " *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997) (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997)). The Supreme Court continued, "[f]ramed for situations in which 'class-action treatment is not as clearly called for' as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit may nevertheless be convenient and desirable." *Id.* (citing Adv. Comm. Notes, 28 U.S.C.App., p. 697).

■ First, it does not appear that any putative class member has a strong interest in maintaining a separate action. Here, individual claims probably are too small to justify pursuing litigation, as demonstrated by Stef-

fen's own admission that she would be unable to maintain a claim if the class action device were not available.

Second, while litigation has been commenced by two other members of the potential class prior to MDL consolidation, Carter and Mortensen supported the grouping of all claims into one class action in the motion for centralization before the Judicial Panel on Multidistrict Litigation.

With respect to the desirability of concentrating the claims in this District, the Judicial Panel on Multidistrict Litigation consolidated the actions arising out of this controversy in this District for consolidated pretrial purposes. Accordingly, "[c]onsolidation of the claims in this forum has therefore been deemed desirable." *Industrial Diamonds,* 167 F.R.D. at 385.

Although Defendant may argue that centralization of the claims is a superior method than class certification, and while it is probably true that handling only the three currently pending actions would consume less of the Court's time than adjudicating a class action, the Court is not persuaded that consolidation, rather than class certification, is the superior method of resolving the claims. In the instant action, where the claims may be too small to pursue individually, class certification may be the only practical method of resolving such claims. *See id.* at 386.

Finally, the Court finds that a class action would be manageable. Here, common issues predominate with respect to liability and as such it would not be unmanageable, particularly in light of the fact that this Court has already been ordered to handle the actions against Playmobil for pretrial purposes. Moreover, if a class action were not maintained, the potential for duplicative litigation warned of in *Catfish* might pose a problem herein, in that:

individual actions by claimants would impose a strangling harness on the judiciary, as well as the parties. Separate actions would produce considerable duplication of effort, increase the cost of litigation, create the risk of inconsistent results for parties who are similarly situated, and consume judicial resources to wasteful levels

(through duplication) throughout the country.

826 F.Supp. at 1045.

██ While common issues predominate over liability, the Court notes that it may be called upon to decided the amount of damages suffered by each putative class member who purchased Defendant's products. It is common in class action litigation to have varying damage claims among class members, but this does not create a bar to certification of the class at the outset. *See Industrial Diamonds,* 167 F.R.D. at 382 (individualized determination of damages does not preclude certification).

This inquiry, however, is likely to require individualized proof. Accordingly, the Court finds that the most efficient way to proceed in this case is to bifurcate the trial of these actions. *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1289 (2d Cir.1990) (proclaiming that the decision whether to bifurcate a trial into liability and damages phases is matter within the sound discretion of the trial court); *Getty Petroleum Corp. v. Island Transp. Corp.,* 862 F.2d 10, 15 (2d Cir.1988).

Thus, in the first phase, the court will try the issues of conspiracy and impact, and the jury will determine liability. In the event that the jury finds the Defendant liable, the Court will then reconsider the issue of whether class treatment of damages is feasible. At that point, the Court has "a number of options, including utilizing a formula to calculate damages, referring the damage issues to a special master or trying these issues, perhaps after certifying appropriate subclasses," if necessary. *Industrial Diamonds,* 167 F.R.D. at 386 (internal citations omitted).

The other issues raised by Defendant are predominately challenges to the merits of Plaintiffs' claims, which, tenable or not, are not befitting the determination of a motion for class certification. Further, antitrust jurisprudence is constantly evolving, requiring detailed consideration of the arguments and theories of recovery raised by each side. *See State Oil Co. v. Khan,* 522 U.S. 3, 118 S.Ct. 275, 283, 139 L.Ed.2d 199 (1997) (explaining the development of antitrust law and overruling *Albrecht* and its rule that vertical maxi-

mum price-fixing is per se unlawful, while affirming vertical minimum price-fixing remains illegal per se). The Court is mindful of the admonition, "if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require." *Sumitomo Copper*, 182 F.R.D. at 88 (quoting *Green v. Wolf Corp.*, 406 F.2d 291, (2d Cir.1968) (internal citations omitted)).

This is especially so because Rule 23 is flexible in its application. For example, under Rule 23(c)(1), class certification may be altered or amended at any time before a decision on the merits, and Rule 23(d) allows the court to make such orders as are necessary to assure the orderly administration of the proceedings.

Consequently, the Court finds that proceeding forward as a class action for liability is superior and would avoid duplication, unnecessary costs and a wasting of judicial resources.

## V REQUIREMENTS OF NOTICE, RULE 23(C)(2)

Pursuant to Rule 23(c)(2), "the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2). Additionally, the notice should advise each member that (1) "the Court will exclude the member from the class if the member so requests by a specified date;" (2) "the judgment, whether favorable or not, will include all members who do not request exclusion"; and (3) "any member who does not request exclusion may, if the member desires, enter an appearance through counsel." Fed.R.Civ.P. 23(c)(2).

The Supreme Court has held that individual notice, as opposed to general published notice, is required for class members who are identifiable through reasonable effort. *Eisen*, 417 U.S. at 173–74, 94 S.Ct. at 2150–51; *see* 4 *Newberg* § 18.51. In antitrust actions, individualized notice is common because the identity of purchasers should be available from Defendant's records. *See id.* Plaintiffs

typically are responsible for the cost of notice to class members. *See id.*

In the instant action, such notice may be troublesome in light of the time that has transpired since the Class Period ended in June of 1995. Moreover, the parties have not addressed the issue of notice. As such, the Court directs the parties to submit to the Court for approval a proposed notice to class members. Such proposal must be submitted to the Court no later than February 26, 1999, and, if possible, the parties should try to stipulate to the proposed notice. If a stipulation is not possible, Defendant's objections must be received no later than March 15, 1999.

## CONCLUSION

For all the aforementioned reasons, Plaintiffs' motion for an order certifying a class pursuant to Rules 23(a) and 23(b)(3) is hereby GRANTED. The class will consist of:

All persons or entities in the United States that purchased Playmobil products directly from Playmobil or an authorized retailer of Playmobil products at any time during the period commencing in or about February 1990 until and including May 22, 1995. Excluded from the Plaintiff Class are the Defendant and any subsidiaries or affiliates of the Defendant or any retail dealer of Playmobil products, whether or not initially named as a Defendant in this Complaint. Also excluded from the Plaintiff Class are Pennsylvania citizens who purchased Playmobil products and were represented in *Commonwealth of Pennsylvania v. Playmobil USA, Inc.*, No. 1:CV–95–0287, 1995 WL 787518, at *1 (M.D.Pa. Dec.15, 1995).

Plaintiffs Ellen Steffen, Laura M. Clark and Denise Mortensen are tentatively approved as designated representatives of this class, pending receipt, within 45 days of this Order, of individual affidavits acknowledging that the costs of the instant litigation, if unsuccessful, will be borne by all class members in a pro rata amount. The parties are directed to submit a proposed Class Notice in

accordance with this Memorandum and Order.

SO ORDERED.